UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN—SOUTHERN DIVISION
_____

| | |
|---|---|
| MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY, | Case No. 1:18-CV-00039 |
| Plaintiff, | Honorable Janet T. Neff<br>Magistrate Ellen Carmody |
| v. | **INTERVENING PLAINTIFF TOWNSHIPS' COMLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| WOLVERINE WORLD WIDE, INC., | |
| Defendant, | |
| And | |
| PLAINFIELD CHARTER TOWNSHIP and ALGOMA TOWNERSHIP, | |
| Intervening Plaintiffs, | |
| WOLVERINE WORLD WIDE, INC. | |
| Defendant. | |

| | |
|---|---|
| Polly A. Synk (P63473)<br>Brian J. Negele (P41846)<br>Assistant Attorneys General, Environment,<br>    Natural Resources, and Agriculture Division<br>Attorneys for Plaintiff<br>P.O. Box 30755<br>Lansing, MI 48909<br>(517) 373-7540<br>synkp@michigan.gov<br>negeleb@michigan.gov | Douglas W. Van Essen (P33169)<br>SILVER & VAN ESSEN, P.C.<br>Attorneys for Intervening Plaintiffs<br>300 Ottawa Avenue, NW, Suite 620<br>Grand Rapids, MI 49503<br>(616) 988-5600<br>dwv@silvervanessen.com |
| John V. Byl (P35701)<br>WARNER NORCROSS & JUDD LLP<br>Attorneys for Defendant<br>111 Lyon Street, NW, Suite 900<br>Grand Rapids, MI 49503<br>(616) 752-2149<br>jbyl@wnj.com | |

Intervening Plaintiffs, The Charter Township of Plainfield ("Plainfield") and Algoma Township ("Algoma"), by and through their attorneys, Silver & Van Essen, P.C., for their Intervening Complaint against Defendant Wolverine World Wide, Inc. (Wolverine), state as follows:

**INTRODUCTION**

1. On January 10, 2018, the Plaintiff, the Michigan Department of Environmental Quality ("MDEQ") filed this civil action for declaratory and injunctive relief, and costs and fees, under the citizen suit provision of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901, *et seq.*, specifically Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), and Part 201, Environmental Remediation, of the Michigan Natural Resources and Environmental Protection Act (NREPA) (Part 201), M.C.L. § 324.20101 *et seq.*, and Part 31, Water Resources Protection, of the NREPA (Part 31), M.C.L. § 324.3101 *et seq.*, specifically M.C.L. § 324.20137 and M.C.L. § 324.3109.

2. The MDEQ alleges that Wolverine has contributed and continues to contribute to the past and present handling, storage, treatment, transportation, and/or disposal of solid waste at properties owned by Wolverine, and also at properties owned by others, in such a manner that resulted in releases of per- and polyfluoroalkyl substances (PFAS) at levels exceeding applicable Michigan cleanup criteria for perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS)(collectively or individually "PFCs"), and which may present an imminent and substantial endangerment to human health and the environment.

3. The MDEQ seeks declaratory and injunctive relief establishing that Wolverine's historic manufacturing processes and waste management practices present an imminent and substantial endangerment to human health and the environment; directing Wolverine to:

investigate and assess the location and extent of releases or threatened releases of PFCs into the environment; develop and implement plans for the continued sampling and analysis of impacts to drinking water wells from PFAS released or disposed of by Wolverine; and "provide alternate drinking water supplies to users of drinking water wells impacted by PFCs for which Wolverine is responsible, including, "connection to municipal drinking water supplies."

4. F.R.Civ.P. 24(a)(2) provides that upon a "timely motion" the Federal Court must permit anyone to intervene who "claims an interest relating to the transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests, unless existing parties adequately represent that interest."

5. Plainfield operates a municipal water system ("MWS") within Plainfield and Algoma, which includes areas that the MDEQ alleges have had groundwater adversely affected by Wolverine's alleged actions. Plainfield is the only municipal entity with a MWS that can provide the relief that the MDEQ seeks in this action.

6. With all due respect to the MDEQ and Wolverine, neither adequately represents Plainfield's or Algoma's interest in an extension of the MWS that the MDEQ seeks from this Court of Wolverine in this action for reasons which include but are not limited to the following:

    a. Neither has the legal authority to build or operate a MWS in the affected area.

    b. Neither has the legal authority to compel Plainfield or Algoma to extend the MWS into the affected area.

    c. Neither has requested that Plainfield or Algoma extend the MWS to the affected area.

      d. Neither has the engineering expertise to extend the MWS to the affected area.

      e. Neither has financing in place to extend the MWS to the affected area.

      f. Neither knows if the MWS can be extended to the affected area.

      g. Neither knows the pressure districts that exist in the various MWS loops and implement extensions;

      h. Neither knows the status of easements nor has the easements necessary to implement extensions;

      i. Neither understands the MWS's plant capacities or changes that are necessary to provide MWS to residents adversely affected by the contamination.

      j. Neither knows how long it would take to extend MWS to the affected area; and

      k. Neither has to live daily, continuously, or indefinitely with the consequences of extending the MWS to the affected area *or* the consequences of not extending the MWS to the affected area.

7. Plainfield and Algoma believe that the MWS can be extended to most of the affected area. Indeed, Plainfield and Algoma fully believe that the MWS, where it can be technically feasible to be extended, is the ***only viable long-term remedy*** for the potable water health threat posed by the alleged contamination for reasons that include the following:

      a. No other alternative will provide a remedy that is free from regular individual property monitoring and regular filter-changing for generations, if not forever;

      b. No other alternative will provide a remedy that is free from property value threatening deed restrictions;

3

c. No other alternative will protect homes from the vagaries and uncertainties of plume location, depth and strength, and filter strength and operation;

d. No other alternative will be monitored and operated by licensed, regulated operators on a continuous basis;

e. No other alternative provides a stable, clean water source that is regularly tested and that is continually regulated by employee engineers of Plainfield and the State of Michigan as well and outside consulting engineers hired by Plainfield and the State of Michigan through standardized regulatory and oversight systems that would not be unique to the area;

f. No other alternative will avoid constant monitoring of properties currently outside the current definition of the plumes or below regulatory action level to ensure that they do not in the future become so adversely affected as to require remedial action either from plume migration or from lowered regulatory levels;

g. No other alternative minimizes the health threats posed by the uncertainties of the situation; and

h. No other alternative will be subject to the regular checks and balances of being supervised through the elected, political process by officials who are *solely* elected by, serve and are accountable to the Plainfield and Algoma residents affected by this water crisis.

## JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction over the RCRA claims set forth in the

4

Complaint and this Intervening Complaint under Section 7002(a) of RCRA, 42 U.S.C. § 6972(a); the federal Declaratory Judgment Act, 28 U.S.C. § 2201; and 28 U.S.C. § 1331.

9. This Court also has supplemental jurisdiction over the common law nuisance claims set forth in this Intervening Complaint under 28 U.S.C. § 1367, as they are substantially related to the RCRA claims and form part of the same case or controversy.

10. Venue is proper in this Court under section 7002(a) of RCRA, 42 U.S.C. § 6972(a), because the Wolverine headquarters and the facilities affected by PFAS attributable to Wolverine are located within the Western District of Michigan and the alleged endangerment occurred and continues to occur within the Western District of Michigan.

**PARTIES**

11. MDEQ is a department of the State of Michigan and is responsible for the overall management and protection of the environmental safety and health of Michigan citizens and residents. A "State" is included within the definition of "person" under RCRA. 42 U.S.C. § 6903(15).

12. Wolverine is a Delaware Corporation with its principal place of business located in Rockford, Michigan. Pursuant to 42 U.S.C. § 6903(15) and Mich. Comp. Laws § 324.301(h), Wolverine is a "person" subject to the provisions of RCRA, 42 U.S.C. §§ 6903(15), 6972.

13. Plainfield and Algoma are Michigan "townships" located in Kent County, Michigan and the Western District of Michigan. Their geographical boundaries encompass contaminated areas as asserted by the MDEQ in this action. They are "municipalities" as intended by Congress within the definition of "person" under RCRA. 42 U.S.C. § 6903(15), and may, therefore, bring a citizen suit thereunder. They are the only municipalities authorized under Michigan law to

5

operate a MWS within their geographical boundaries. See M.C.L. § 41.411.

## COMMON ALLEGATIONS

14. The Rockford Tannery is a site located at 123 North Main Street, Rockford, Michigan. At all times relevant to this litigation, Wolverine has owned the Rockford Tannery.

15. Wolverine utilized the Rockford Tannery from 1908 to 2009 to process hides and leathers for use in shoes, boots, and other consumer leather goods. The Tannery building was demolished in 2010.

16. Buried hides and leathers have been identified at and in the vicinity of the Rockford Tannery.

17. Wolverine disposed of wastes from tannery operations at and near the "House Street Disposal Site," a property located at 1855 House Street, Belmont, Michigan, which is located within Plainfield.

18. The House Street Disposal Site was licensed under Act 87 of the Public Acts of 1965 (Act 87) for the disposal of solid waste in 1966. Records from the early 1960s reference Wolverine's placement of tannery wastes on the site prior to 1966.

19. Wolverine disposed of waste at and near the House Street Disposal Site from the mid-1950s through 1970. Wolverine has submitted a plan to MDEQ for investigation of the House Street Disposal Site.

20. On information and belief, Wolverine also disposed of tannery wastes in locations other than the Rockford Tannery and the House Street Disposal Site during a similar period from the mid-1950s through the 1970s. Most, if not all, of these sites are located in Plainfield and Algoma.

21. On information and belief, tannery wastes from Wolverine's Rockford Tannery contained PFAS from waterproofing operations.

22. Wolverine's manufacturing processes and associated waste management and disposal activities caused the release of PFCs including per- and polyfluoroalkyl substances (PFAS) into the environment, including but not limited to perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS).

23. The PFCs released by Wolverine have migrated into the environment, including, but not limited to, surface water, soils, and groundwater, at the Rockford Tannery, the House Street Disposal Site, and other areas where Wolverine disposed of tannery wastes, including in groundwater discharging to the Rogue River adjacent to the former Rockford Tannery and into plumes moving South into Plainfield and North into Algoma.

**INVESTIGATION AND CHARACTERIZATION ACTIVITIES**

24. Wolverine performed sampling in 2017 for PFCs both on the Rockford Tannery property and in the adjacent Rogue River. Results indicated that PFCs are present in the groundwater onsite, as well as in groundwater discharging to the Rogue River.

25. Wolverine collected surface water samples from the Rogue River downgradient from the former Rockford Tannery in 2017 and detected PFAS in the samples.

26. PFCs were also detected in the groundwater discharging to surface water adjacent to the former Rockford Tannery and in surface water both upstream and downstream of the Rockford Dam. Results of the sampling demonstrated that groundwater on the Rockford Tannery site exceed Part 201 groundwater-surface water interface criteria for both PFOA and PFOS, Part 201 being Michigan's state law governing drinking water standards, among other

7

things.

27. Sampling results in groundwater and residential wells indicate that the PFAS have also migrated from the original locations where disposal activities took place.

28. Wolverine has been engaged in the investigation, characterization, and/or remediation of these PFAS since their discovery in 2017 and has complied with several requests from MDEQ to conduct investigations, sampling, and action to provide alternate water supplies at locations suspected or confirmed to have impacts to drinking water sources. Wolverine conducted PFC sampling at locations including but not limited to described as House Street, Wolven/Jewell, Wellington Ridge, and Rogue River. MDEQ conducted PFC sampling at the location depicted on Exhibit A attached to the MDEQ's complaint and described as North Childsdale/10 Mile. These areas are located within Plainfield and Algoma.

29. As of January 8, 2018, Wolverine has sampled 640 residential drinking water wells for PFAS due to concerns over the possible migration of PFAS from the House Street Disposal Site. Of these, 30 residential drinking water wells have tested above the Part 201 generic residential drinking water cleanup criteria of 70 parts per trillion (combined) established for two PFAS: PFOA and PFOS. In addition, groundwater at and emanating from the House Street Disposal Site exceeds Part 201 groundwater-surface water interface criteria for PFOS.

30. On information and belief, Wolverine has offered bottled water to all residents whose wells it has sampled for PFCs. In addition, as of January 8, 2018, Wolverine has installed 90 point-of-use filtration systems and 410 point-of-entry filtration systems based on PFC sampling results. Wolverine has also begun a remedial investigation of the House Street Disposal Site groundwater plume to define the horizontal and vertical extent of PFC contamination as well as

potential PFC impacts to surface waters.

31. As of January 8, 2018, Wolverine has sampled 549 residential wells for PFCs in association with locations in Kent County, other than the Rockford Tannery and the House Street Disposal Site, where Wolverine tannery wastes may have been disposed and released PFCs into the environment. Of these, 48 residential drinking water wells have tested above the Part 201 generic residential drinking water cleanup criteria for PFOA and PFOS.

32. As is further outlined below, while Wolverine has been engaged in the investigation, characterization, and/or remediation of PFC-related contamination and wastes since their discovery in 2017, on information and belief, these Part 201 PFC hazardous substances, contaminants and wastes continue to be present in the soil, surface water, and groundwater at the Rockford Tannery, the House Street Disposal Site, and other disposal sites still being identified, and in groundwater discharging to the Rogue River adjacent to the Rockford Tannery at unsafe levels and in plumes across large sections of Plainfield and Algoma.

33. Wolverine has also been involved in extensive discussions with Plainfield regarding the extension of MWS to affected areas and Plainfield has incurred and will incur expenses and damages in providing such clean MWS to the affected areas, although, on information and belief, Wolverine does not believe it can contractually commit to Plainfield until the present lawsuit is resolved and that any such commitment must be consistent with and/or a part of any decree approved or issued by this Court in this case.

**CLAIMS FOR RELIEF**

**COUNT I: RCRA – IMMINENT AND SUBSTANTIAL ENDANGERMENT**

34. Plainfield and Algoma reallege and incorporate by reference paragraphs 1

9

through 33 of this Intervening Plaintiffs' Complaint as if fully set forth herein.

35. Section 7002(a)(l)(B) of RCRA, 42 U.S.C. § 6972(a)(l)(B), under which Plainfield and Algoma bring this claim, is RCRA's citizen enforcement provision. Section 7002(a)(l)(B) authorizes "any person," which includes Plainfield and Algoma, to seek redress in federal court for risks posed to public health and the environment by "hazardous wastes" and "solid wastes." A Section 7002(a)(l)(B) claim alleges endangerment to health or environment rather than a statutory violation.

36. Any person may bring a lawsuit under RCRA § 7002(a)(1)(B) when: (a) a "solid or hazardous waste"; (b) "may present an imminent and substantial endangerment to health or the environment"; and (c) the defendant falls within one of the categories of entities that Congress declared liable for taking abatement action or such other action as a court determines may be necessary.

37. The persons declared liable by Congress for abatement of endangerments under RCRA § 7002(a)(l)(B) are entities that contributed to "past or present handling, storage, treatment, transportation, or disposal" of the "solid wastes" at issue.

38. For purposes of RCRA § 7002(a)(l)(B) citizen suits, substances qualify as "solid wastes" when the above statutory definition as set forth in RCRA § 1004(27) is met.

39. The tannery wastes containing and leaching PFAS contaminants, including PFOA and PFOS, into the environment are solid wastes because they constitute discarded materials resulting from Wolverine's industrial and commercial operations.

40. According to the U.S. EPA, human exposure to PFOA and PFOS and other PFCs may result in adverse health effects to humans such as developmental, thyroid, liver, and immune

system effects.

41. Wolverine has caused or contributed to a condition that presents or may present an imminent and substantial endangerment to health or the environment because Wolverine released "solid wastes" into the environment.

42. Wolverine has caused or contributed to a condition that may present an imminent and substantial endangerment to health or the environment because Wolverine: (a) owned the Rockford Tannery and the House Street Disposal Site at the time that the release of the "solid wastes" from these sites occurred and yet failed to prevent that release of the "solid wastes"; or (b) failed to investigate and abate the "solid waste" contamination once the release of the "solid wastes" occurred at the Rockford Tannery, the House Street Disposal Site, and other areas where Wolverine disposed of tannery wastes.

43. Under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27), "solid waste" is "discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities."

44. Plainfield and Algoma are entitled to relief under RCRA § 7002(a), 42 U.S.C. § 6972(a), requiring Wolverine to take such action as may be necessary to abate the imminent and substantial endangerment to public health and the environment based on the disposal of "solid wastes" that present an imminent and substantial endangerment to public health and the environment and to provide damages proximately caused to Plainfield and Algoma to provide clean MWS as a remedy necessitated by such releases as described above and below in this Complaint.

**COUNT II: VIOLATIONS OF COMMON LAW NUISANCE**

45. Plainfield and Algoma reallege and incorporate by reference paragraphs 1 through 44 of this Intervening Plaintiff's Complaint as if fully set forth herein.

46. Plainfield and Algoma have a private and public right to be free from interference in the planning and delivery of safe drinking water to their residents and to be free of the damages previously described above.

47. Wolverine has unreasonably and significantly interfered with Plainfield and Algoma's private and public rights as stated above by contaminating the well drinking water, as described above, of many of their residents in the areas described above within Plainfield and Algoma, thereby forcing Plainfield and Algoma to plan for, engineer and deliver Plainfield's clean MWS to those residents to protect their health and safety, peace, property, comfort and/or convenience.

48. Wolverine knew, or should have known, that its unreasonable and significant interference would produce a permanent or long-lasting infringement on Plainfield and Algoma's rights as stated above and force it to incur the costs and damages described above.

49. Wolverine's actions in contaminating the well water and discharging PFAS and related hazardous compounds into the groundwater as alleged above have created a public and private nuisance entitling Plainfield and Algoma to recover their costs in the planning, designing, engineering, construction, financing, implementation and operation of MWS improvements and extensions into and for their residents in the affected areas, including but not limited to new filtering in Plainfield's water treatment plant in order to provide clean, water free of PFAS or related compounds in order to meet the health and safety needs of their residents unduly

exposed to such compounds by the nuisance caused by Wolverine.

50. The nuisance caused by Wolverine, as described above, is the direct and proximate cause of Plainfield's and Algoma's MWS costs and damages as described above.

## RELIEF REQUESTED

WHEREFORE, Plainfield and Algoma respectfully request that the Court enter judgment awarding them the following relief:

A. Declare and adjudge that Wolverine's past and/or present generation, handling, storage, treatment, transportation, and/or disposal of solid wastes presents, or may present, an imminent and substantial endangerment to human health and to the environment under RCRA Section 7002(a)(1)(B) and constitute a public nuisance;

B. Order Wolverine to abate the public health threats caused by its RCRA violation and public nuisance, specifically its discharge of injurious substances into the groundwater, by reimbursing Plainfield and Algoma for their costs in the planning, designing, engineering, construction, financing, implementation and operation of MWS improvements and extensions into and for their residents in the affected areas, including but not limited to new filtering in Plainfield's water treatment plant in order to provide clean, water free of PFAS or related compounds in order to meet the health and safety needs of their residents unduly exposed to such compounds.

C. Such other relief as the Court deems just and proper, including but not limited to costs and damages as described above and in this Complaint.

March 14, 2018				Respectfully Submitted,

**Silver & Van Essen, P.C.**
Attorneys for The Charter Township of Plainfield and Algoma Township

By:\s\Douglas W. Van Essen
    Douglas W. Van Essen (P33169)
    Lee T. Silver (P39605)
    Michael Gutierrez (P79440)

**Business Address & Telephone:**
    300 Ottawa, N.W., Ste 620
    Grand Rapids, MI. 494503
    (616) 988-5600
    dwv@silvervanessen.com

14