**EXHIBIT D**

**Area 19 Request for Review**



**Sent Via Email Only**

January 5, 2025
File No. 16.0062961.11

Mr. Mike Neller
Director, Remediation and Redevelopment Division
Michigan Department of Environment, Great Lakes, and Energy
525 W. Allegan Street (P.O. Box 30426)
Lansing, MI 48909
**NellerM@michigan.gov**

Re:  Wolverine World Wide, Inc.  Consent Decree Court Case No. 1:18-cv-00039
      Area R-1 (19) Completion Report Disapproval – **Request for Review**

Dear Mr. Neller:

In response to EGLE's December 26, 2025, Statement of Position Pertaining to Wolverine's Area 19 Completion Report, and the parties' inability to resolve their dispute through the informal dispute resolution process described under Paragraph 18.5 of the Wolverine World Wide, Inc. ("Wolverine") Consent Decree (W.D. Mich. Case No. 1:18-cv-39; "CD"), Rose & Westra, a Division of GZA GeoEnvironmental, Inc. ("R&W/GZA") submits this Request for Review on behalf of Wolverine under Paragraph 18.7 of the CD. This Request for Review incorporates by reference and relies on all of Wolverine's prior submissions to EGLE, including those under Paragraphs 7.9(b)(ii) and 7.12(a)(vii) of the CD.

Wolverine's Area 19 Completion Report should be approved. Under Paragraph 7.12(a)(vii) of the CD, the only requirement for the Area 19 Completion Report is that it "demonstrate[] that [Wolverine] has completed the Response Activities Required by Paragraph 7.9(b)[(ii)]." There is no requirement to undertake long-term response activities. Indeed, it would be impossible for the Completion Report to demonstrate completion of such activities, which by definition could only be performed after the Completion Report is submitted. It makes sense, then, that there is similarly no requirement in the CD to post a financial assurance mechanism to support any long-term response activities for Area 19. No such activities are required. There is only a requirement to demonstrate that Wolverine completed the work it agreed to perform under Paragraph 7.9(b)(ii) of the CD.

Under Paragraph 7.9(b)(ii) of the CD, the work Wolverine agreed to perform in Area 19 was to install groundwater wells in accordance with the Statement of Work ("SOW") and Response Activity Plan ("RAP") and to conduct one sampling event at each monitoring well it installed in Area 19. There can be no dispute that Wolverine has completed that work. Rather, EGLE's disapproval of the Completion Report appears to be premised on a demand that Wolverine perform additional delineation work in Area 19. In so doing, EGLE attempts to impose additional Part 201 obligations on Wolverine despite the fact that Wolverine contested such liability. EGLE may wish it were otherwise, but the CD simply does not require more from the Completion Report for Area 19.

In fact, imposing a requirement to perform additional long-term monitoring or delineation



An Equal Opportunity Employer M/F/V/H



would nullify the specific, negotiated sampling limitations in the judicially approved CD and associated SOW and RAP for Area 19. It would be contrary to the fundamental compromise embodied in the extensively negotiated CD and would completely reopen the lawsuit that the CD comprehensively resolved in an agreed-on compromise among the parties.

**Background and Procedural History**

Wolverine completed the installation of monitoring wells in Area 19 and one round of sampling at each well on September 15, 2023. The Completion Report documenting completion of that work was submitted on February 19, 2025.

The work outlined in the Area 19 SOW and RAP is summarized in Table 5.1.1 of the submitted Completion Report.

EGLE issued a Disapproval of the Area 19 Completion Report on November 25, 2025. Following EGLE's disapproval, Wolverine initiated the informal dispute resolution process under Paragraph 18.5 of the CD. The parties have been unable to resolve their dispute, and Wolverine hereby initiates formal dispute resolution under Paragraph 18.7 of the CD.

**Governing Provisions of the CD, SOW, and RAP**

The CD reflects a compromise. Among other things, it evidences a compromise based on Wolverine's willingness to pay for the extension of municipal water in the Municipal Water Areas, the dearth of evidence connecting Wolverine to a release of PFAS to groundwater in Area 19, and other factors that were litigated in the underlying lawsuit. The negotiations that resolved that lawsuit, and the relative weakness of EGLE's case against Wolverine with respect to Area 19, leave no room for doubt that Wolverine's Area 19 obligation is limited installing wells, sampling them once, and then handing them over to EGLE. Any other reading is simply an attempt to re-write the CD as if the reality of those underlying facts, and the compromise embodied in the CD, do not exist.

The plain language of the CD and associated SOW and RAP limit Wolverine's obligations in Area 19. Paragraph 7.9(b)(ii) of the CD provides as follows:

> In Area R-1 (19) (depicted in Appendix Q—Map of Groundwater Investigation Area R-1 (19)) of the Filter Areas, Defendant will install groundwater monitoring wells in accordance with Appendix R— Statement of Work for R-1 (19) Groundwater Monitoring and the Response Activity Plan in Paragraph 7.4(a). Defendant shall conduct one sampling event in accordance with Appendix R— Statement of Work for R-1 (19) Groundwater Monitoring and the Response Activity Plan in Paragraph 7.4(a) at each monitoring well it installs in Area R-1 (19). Following the one (1) sampling event, Defendant shall have no further obligations for sampling, maintenance, or abandonment of that monitoring well. Once the vertical and horizontal extent of the PFAS Compounds contamination in Area R-1 (19) of the Filter Areas is defined, Defendant shall have no further obligation for groundwater investigations in Area R-1(19) of the Filter Areas. MDEQ may conduct future sampling events at the monitoring wells and will be responsible for maintaining and abandoning of the monitoring wells installed hereunder.

The SOW and RAP reinforce this limited scope, calling for one round of sampling followed by evaluation of results with EGLE. The SOW provides the location of the groundwater monitoring wells for Area 19, and the RAP provides additional detail for the location and plan for sampling of those wells. *See* CD Appendix R, pp. 1–4; RAP, p. 13. These provisions, read together with the CD, prescribe a narrowly defined installation and sampling obligation, not an open-ended delineation obligation. Upon completing this work, Paragraph 7.12(a)(vii) of the CD required Wolverine to submit the Area 19 Completion Report.



In rejecting Wolverine's Completion Report, EGLE asserts that Wolverine's obligations are not complete. As support, EGLE relies on the following sentence in Paragraph 7.9(b)(ii) of the CD: "Once the vertical and horizontal extent of the PFAS Compounds contamination in Area R-1 (19) of the Filter Areas is defined, Defendant shall have no further obligation for groundwater investigations in Area R-1(19) of the Filter Areas." EGLE places too much emphasis on this provision.

EGLE's reading of Paragraph 7.9(b)(ii) results in an irreconcilable contradiction. Taken as a whole, Paragraph 7.9(b)(ii) cannot simultaneously limit Wolverine's obligation to installation of wells and a single sampling of those wells while also imposing an open-ended mandate to delineate all PFAS contamination in Area 19. Standard principles of interpretation require that these clauses be read in concert, where the specific, negotiated single sampling requirement clarifies the scope of the general, passive-voice delineation language. Otherwise, the general requirement to delineate would swallow the entire Consent Decree. Adopting EGLE's interpretation would be arbitrary and capricious and otherwise not in accordance with law, as it would nullify the specific requirements outlined in the SOW and RAP and ignore the fundamental, negotiated compromise embodied in Paragraph 7.9(b)(ii)—a compromise that was fundamental to resolving the underlying litigation between the parties at the time the CD was being negotiated.

Furthermore, the CD explicitly limits the kind of scope-creep that EGLE is attempting here. Paragraph 7.14(a) of the CD states that while EGLE may require modifications to a RAP, it "may not require a modification to a portion of a Response Activity Plan that was contained in a statement of work attached to this Consent Decree." The Area 19 SOW was attached to the CD as Appendix R and explicitly limited the sampling in conformance with Paragraph 7.9(b)(ii). EGLE's attempt to arbitrarily impose an open-ended delineation requirement is therefore an impermissible modification of the specific, negotiated, and limited obligations contained in the CD and its associated SOW for Area 19.

EGLE's reliance on its Notice of Approval with Conditions of the RAP is also misplaced. While EGLE's notice states its "anticipat[ion] that after this first round of drilling, additional monitoring wells will be needed", and that "Wolverine must define the vertical and horizontal extent of the PFAS Compounds contamination within Area 19", these statements do not—and cannot—impose new obligations on Wolverine. EGLE's Notice of Approval is not a legally binding modification to the Consent Decree. At most, it reflects EGLE's own interpretation and future intentions. But EGLE cannot use the submission and approval process under a judicially approved consent decree to unilaterally alter the specifically negotiated terms of the governing document. Otherwise, the CD itself would be a meaningless document.

In sum, the plain language of the governing documents, supported by their negotiation history, establishes a defined and limited scope of sampling work rather than an open-ended mandate for Wolverine to undertake additional delineation efforts to EGLE's satisfaction.[1] Indeed, these documents make clear that Wolverine's obligations in Area 19 ended with the completion of one round of sampling. With that work completed as documented, the Area 19 Completion Report should have been approved.

**Wolverine's Informal Negotiation Attempts**

Pursuant to the CD, Wolverine attempted to resolve this dispute through informal negotiations, but its offers to meet and discuss a reasonable path forward were declined by EGLE. EGLE also rejected mediation, insisting that any dispute or any possible resolution to the dispute involving Area 19 relates purely to the interpretation of the CD and not to any technical issues associated with any of Wolverine's submissions.

EGLE's inflexibility, discontinuation of informal discussions, and refusal to consider mediation or engage in any attempt

---

[1] As the CD itself makes clear, EGLE is free to undertake that work if it believes it is warranted: "[EGLE] may conduct future sampling events at the monitoring wells and will be responsible for maintaining and abandoning of the monitoring wells installed hereunder." CD ¶ 7.9(b)(ii).



January 5, 2026
16.0062961.11
Area R-1 (19) Completion Report Disapproval – Request for Review
*Page | 4*

to resolve this dispute outside of formal dispute resolution betoken something other than an agency operating in good faith to resolve rather than needlessly escalate a dispute. Those actions are themselves arbitrary, capricious, and broadly inconsistent with the cooperative framework of the CD's dispute resolution process.

**Conclusion and Request for Relief**

For the foregoing reasons, Wolverine requests that you find that Wolverine has completed the work required under Paragraph 7.9(b)(ii) of the CD and direct EGLE to approve Wolverine's Area 19 Completion Report.

Very truly yours,

Rose & Westra, a Division of GZA GeoEnvironmental, Inc.

Loretta J. Powers, CHMM                                              Mark A. Westra
Associate Principal                                                          Principal

\\gzagr1\Jobs\62000\629xx\62961.xx - WWW RAP-WP\62961.11 - Area 19 Implementation\Report\RFR Docs\Request for Review - Area 19 - F.docx

Enclosures:    1 Area 19 Completion Report
2 EGLE's November 25, 2025 Disapproval of the Area 19 Completion Report
3 EGLE's December 26, 2025 Statement of Position
4 Relevant CD excerpts (¶¶ 7.9(b)(ii), 7.12(a)(vii), 7.14(a); § XVIII)
5 Area 19 SOW and RAP
6 Additional correspondence regarding Wolverine's offers to discuss supplemental work and requests for mediation

c: Ms. Leah Gies – Michigan Department of Environment Great Lakes and Energy via email GiesL1@michigan.gov