# EXHIBIT E

## Area 19 Statement of Decision


STATE OF MICHIGAN
DEPARTMENT OF
ENVIRONMENT, GREAT LAKES, AND ENERGY
REMEDIATION AND REDEVELOPMENT DIVISION

GRETCHEN WHITMER
GOVERNOR

PHILLIP D. ROOS
DIRECTOR

January 26, 2026

VIA EMAIL ONLY

Dave Latchana
Associate General Counsel
Wolverine World Wide, Incorporated
9341 Courtland Drive NE
Rockford, Michigan 49341

Dear Dave Latchana:

SUBJECT: Statement of Decision Pertaining to the Area 19 Completion Report as Required by Wolverine World Wide, Incorporated Consent Decree
Court Case No. 1:18-cv-00039
Location ID: 41001161

Wolverine World Wide, Incorporated (Wolverine) invoked a dispute through its Notice of Dispute Letter dated December 5, 2025, pursuant to Section 18.5(c) of the Consent Decree (effective February 19, 2020) pertaining to the Michigan Department of Environment, Great Lakes, and Energy's (EGLE) disapproval of the draft Area R-1 (19) Completion Report.

After EGLE received the Notice of Dispute Letter, EGLE and Wolverine's environmental consultant, GZA GeoEnvironmental, Incorporated (GZA), undertook informal negotiations and discussed Wolverine's objections with EGLE's November 25, 2025, Disapproval of the Area 19 Completion Report letter (Disapproval Letter).  Upon the conclusion of the informal negotiations on December 26, 2025, Wolverine and EGLE remained in disagreement over Wolverine's position that it does not have an obligation under the Consent Decree to define the vertical and horizontal extent of per- and polyfluoroalkyl substances (PFAS) in Area R-1 (19).  The dispute arose out of a difference of interpretation of what is required under the Consent Decree; therefore, mediation of technical aspects was not appropriate as stated in Section 18.6 of the Consent Decree.

Dave Latchana
Page 2
January 26, 2026

On January 5, 2026, EGLE received a Request for Review from GZA on behalf of Wolverine in response to EGLE's Statement of Position (SOP) dated December 26, 2025. Wolverine's Request for Review states that "*Wolverine's Area 19 obligation is limited [to] installing wells, sampling them once, and then handing them over to EGLE*" and "*that Wolverine has completed the work required under Paragraph 7.9(b)(ii) of the CD.*" EGLE disagrees with these statements.

The obligation for Wolverine to define the vertical and horizontal extent of the PFAS Compounds contamination in Area R-1 (19) is included in Section 7.9(b)(ii) and is described in the Area R-1 (19) Statement of Work (SOW) and the Area R-1 (19) Response Activity Plan (RAP). Section 7.9(b)(ii) provides that: "*Once the vertical and horizontal extent of the PFAS Compounds contamination in Area R-1 (19) of the Filter Areas is defined, Defendant shall have no further obligation for groundwater investigations in Area R-1(19) of the Filter Areas.*" Wolverine concedes that the vertical and horizontal extent of PFAS Compounds contamination has not been defined in Area R-1 (19).

Further, the Statement of Work (SOW) included as Appendix R of the Consent Decree states, "*The purpose of this SOW is to determine the location of groundwater monitoring wells and provide an outline for a Response Activity Plan to define the vertical and horizontal extent of per- and polyfluoroalkyl substances (PFAS) at Area R-1 (19) in compliance with Part 201 of the Michigan Natural Resources and Environmental Protection Act. Following completion of the tasks in this SOW, R&W/GZA will evaluate the data in consultation with EGLE and determine appropriate next steps.*"

In Paragraph 4.0 (Proposed Monitoring Wells) of the SOW, the initial set of agreed-upon monitoring well locations are proposed and the intent listed for each monitoring well reiterates the objective to further evaluate the extent of PFAS Compounds contamination within Area R-1 (19). This objective is listed numerous times:

- Second Bullet: "*The purpose is to further evaluate the PFOA+PFOS extent and groundwater elevations in this area and the PFAS distribution east of the potential groundwater mound*";
- Third Bullet: "*These monitoring well nests will also provide better understanding of groundwater elevations and groundwater flow north and northwest of the apparent groundwater mound*";

Dave Latchana
Page 3
January 26, 2026

- Fourth Bullet: "*to further evaluate the PFOA+PFOS extent (PFOA+PFOS plume width)*";
- Fifth Bullet: "*The purpose [of these wells] is to further delineate the extent of PFOA+PFOS in the area*"; and
- Sixth Bullet: "*The purpose of these well[s] is to further characterize the PFOA+PFOS plume in the area*".

Following completion of the tasks in this SOW, R&W/GZA was to evaluate the data in consultation with EGLE and determine appropriate next steps. It is clear that the intention of the SOW was to adhere to Wolverine's obligations under Paragraph 7.9(b)(ii) of the Consent Decree, and it was clear these obligations may not be fulfilled after the initial SOW.

The RAP submitted by GZA on behalf of Wolverine, and approved with conditions by EGLE on October 30, 2020, also states, "*The objective of this RAP is to define the vertical and horizontal extent of PFAS at Area 19 in compliance with Section 7.9(b)(ii) of the CD*". The need to further evaluate the PFAS contamination within Area R-1 (19) is reiterated numerous times throughout the RAP:

- Paragraph 2.07: "*The project objectives are to monitor possible migration of PFAS/PFOA+PFOS to Area 19 and evaluate if Area 19 receptors are potentially exposed to PFOA+PFOS about 10 ng/L via groundwater ingestion, and to define the horizontal and vertical extent of PFAS in Area 19*";
- Paragraph 3.0, Second Bullet: "*The purpose is to further evaluate the PFOA+PFOS extent and groundwater elevations in this area and the PFAS distribution east of the potential groundwater mound*";
- Paragraph 3.0, Third Bullet: "*These monitoring well clusters will also provide better understanding of groundwater elevations and groundwater flow north and northwest of the apparent groundwater mound*";
- Paragraph 3.0, Fourth Bullet: "*Two remedial investigation well clusters are proposed …. to further evaluate the PFOA+PFOS extent (PFOA+PFOS plume width)*";
- Paragraph 3.0, Fifth Bullet: "*The purpose [of these wells] is to further delineate the extent of PFOA+PFOS in the area*"; and
- Paragraph 3.0, Sixth Bullet: "*The purpose of these wells is to further characterize the PFOA+PFOS plume in the area*".

Dave Latchana
Page 4
January 26, 2026

The RAP concludes with GZA stating that "*R&W/GZA will evaluate the data in consultation with EGLE and determine appropriate next steps.*"  It is again clear that the intention of the RAP was to evaluate the data and determine if Wolverine's obligations had been fulfilled after the activities proposed in the RAP.

It is clear throughout the Consent Decree, SOW, and RAP that Wolverine has always had the obligation to define the vertical and horizontal extent of PFAS contamination in Area R-1 (19).  As stated in EGLE's Disapproval Letter, this obligation has not been fulfilled.

Additionally, the Request for Review also states that "*EGLE attempts to impose additional Part 201 obligations on Wolverine…*". EGLE disagrees with this statement. Wolverine's obligations to perform response activities in a manner that complies with the requirements of Part 201, including Section 20114 of Part 201, is also clearly stated in Paragraph 7.1 (Performance Objectives) of the Consent Decree:  "*Defendant shall perform Response Activities in the North Kent Study Area as described in this Consent Decree in a manner that complies with the requirements of Part 201, including Section 20114 of Part 201…*". Section 20114(1)(a) of Part 201 requires Wolverine to determine the nature and extent of the release at the facility. Paragraph 7.1(f) of the Consent Decree states that Wolverine must "*implement Response Activities to define the nature and extent of PFAS Compounds in groundwater in the Filter Areas as required by this Consent Decree.*"

In accordance with Section 18.7(c) of the Consent Decree, EGLE is providing Wolverine with its Statement of Decision that is consistent with EGLE's SOP (attached).  Pursuant to Paragraph 7.9(b)(ii) of the Consent Decree, Wolverine is required to define the vertical and horizontal extent of the PFAS Compounds contamination in Area R-1 (19) and comply with Section 20114 of Part 201.

If you have further questions or concerns, please contact me at the telephone number below or by email at NellerM@Michigan.gov.

                              Sincerely,

                              Josh Mosher for Mike Neller, Director
                              Remediation and Redevelopment Division
                              517-512-5859

Dave Latchana
Page 5
January 26, 2026

Attachment

cc: Erin Orndorff, Wolverine World Wide, Incorporated
    John Byl, Warner Norcross & Judd LLP
    Scott Watson, Barnes and Thornburg LLP
    Mark A. Westra, GZA
    Loretta Powers, GZA
    Polly Synk, Department of Attorney General
    Danielle Allison-Yokom, Department of Attorney General
    Matt Gamble, EGLE
    Dan Yordanich, EGLE
    Karen Vorce, EGLE
    Darren Bowling, EGLE
    Ashley Coplin, EGLE
    Lynn Gosson, EGLE
    Leah Gies, EGLE




STATE OF MICHIGAN
DEPARTMENT OF
ENVIRONMENT, GREAT LAKES, AND ENERGY
REMEDIATION AND REDEVELOPMENT DIVISION

GRETCHEN WHITMER
GOVERNOR

PHILLIP D. ROOS
DIRECTOR

December 26, 2025

VIA EMAIL ONLY

Dave Latchana
Associate General Counsel
Wolverine World Wide, Incorporated
9341 Courtland Drive NE
Rockford, Michigan 49341

Dear Dave Latchana:

SUBJECT:   Statement of Position Pertaining to the Area 19 Completion Report as Required by the Wolverine World Wide, Incorporated Consent Decree
Court Case No. 1:18-cv-00039
Location ID:  41001161

Wolverine World Wide, Incorporated (Wolverine) invoked a dispute through its Notice of Dispute Letter dated December 5, 2025, to the Michigan Department of Environment, Great Lakes, and Energy (EGLE), under Section 18.5(c) of the Consent Decree (effective February 19, 2020) pertaining to EGLE's disapproval of the draft Area R-1 (19) Completion Report.

After EGLE received the notice identified above, EGLE and Wolverine's environmental consultant, GZA GeoEnvironmental, Incorporated (GZA), undertook informal negotiations and discussed Wolverine's objections with EGLE's November 25, 2025, Disapproval of the Area 19 Completion Report letter (Disapproval Letter).

During the informal negotiations, GZA stated that Wolverine does not have an obligation under the Consent Decree to define the vertical and horizontal extent of per- and polyfluoroalkyl substances (PFAS) in Area 19.  EGLE disagrees with that statement.  Below is EGLE's Statement of Position:

> Section 7.9(b)(ii) of the Consent Decree requires that Wolverine define the vertical and horizontal extent of the PFAS Compounds contamination in Area R-1 (19).  The Consent Decree is clear that only once the vertical and horizontal extent of the PFAS contamination has been defined, Wolverine's obligations for groundwater investigations may cease within Area 19.
>
> This was reiterated in EGLE's October 30, 2020, Notice of Approval with Conditions of the Area 19 Response Activity Plan, where EGLE stated, "per the requirements of the Consent Decree, Wolverine must define the vertical and horizontal extent of PFAS Compounds contamination within Area 19 as required

by Part 201.  EGLE anticipates that after this first round of drilling, additional monitoring wells will be needed to meet that objective."

It was always the intention that after the monitoring wells specified in the Consent Decree were installed and sampled, the data collected from Area 19 would need to be evaluated to determine if the extent of the PFAS contamination was defined and if additional wells were needed.  In the last paragraph of Section 8.0 of the Final Area 19 Response Activity Plan, GZA states, "following the full year of quarterly sampling of the well network, R&W/GZA will evaluate the data in consultation with EGLE and determine appropriate next steps."

It is EGLE's position that Wolverine has a known obligation to define the vertical and horizontal extent of the PFAS Compounds contamination in Area R-1 (19) and Wolverine knew additional monitoring wells may be needed to do that.

Upon receipt of this Statement of Position, Wolverine may initiate formal dispute resolution by submitting a written Request for Review to the Remediation and Redevelopment Director, as described in Section 18.7 of the Consent Decree.

If you should have further questions or concerns, please contact Leah Gies, Remediation and Redevelopment Division, Grand Rapids District Office, at 616-215-4781 or GiesL1@Michigan.gov.

Sincerely,

Karen Vorce
District Supervisor
Grand Rapids District Office
Remediation and Redevelopment Division
616-439-8008
VorceK@Michigan.gov

cc: Erin Orndorff, Wolverine World Wide, Incorporated
    John Byl, Warner Norcross & Judd LLP
    Scott Watson, Barnes and Thornburg LLP
    Mark A. Westra, GZA
    Loretta Powers, GZA
    Polly Synk, Department of Attorney General
    Danielle Allison-Yokom, Department of Attorney General
    Ashley Coplin, EGLE
    Lynn Gosson, EGLE
    Leah Gies, EGLE